[Civ. No. 3640. Third Appellate District.—November 14, 1928.]

PARKER M. LEWIS, Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation) et al., Respondents.

Munson T. Case and Tanner, Odell & Taft for Appellant.

Frank Karr, E. E. Morris and C. W. Cornell for Respondents.

FINCH, P. J.—The plaintiff brought this action against the defendants to recover damages for injuries sustained by him when struck by an electric car operated by the defendant corporation, which will be referred to herein as the defendant. The jury returned a verdict in favor of the defendant and the plaintiff has appealed from the judgment entered thereon.

The defendant operates a double track electric railway between Los Angeles and Pasadena. For several hundred feet in both directions from the scene of the accident the tracks are upon the defendant's private right of way, which is about 34 feet in width and lies immediately west of Pasadena Avenue and in the city of Los Angeles. The distance between the tracks is 9 feet 10 inches and the distance between the rails of each track is 5 feet 9 inches. The distance between the westerly curb of Pasadena Avenue and the nearest rail is approximately 7 feet. Pasadena Avenue is 59 feet in width. At the place of the accident the defendant maintains cement platforms, about 53 feet in length, between the outer rails and the boundary lines of its right of way, with seats upon the westerly platform for the use of passengers. These platforms, referred to by the witness as the station, appear to be on a level with the tops of the rails, and the intervening space is filled with a mixture of cement and gravel to the same level. In going from Pasadena Avenue to the westerly platform it is necessary, of course, to cross both tracks. Cars going in either direction stop on signal to receive and discharge passengers. About 186 feet in a southerly direction from the station the tracks curve to the right, skirting the foot of a hill. Between the tracks is a line of electric power poles. Commencing with the first pole south of and near the station and going in a southerly direction, the successive distances between the poles are, in round numbers, 49, 63, 49, 43, and 44 feet. These poles obstruct the view from the easterly platform to

some extent, but the motorman in charge of the car which struck the plaintiff testified that, "going north approaching that station I would say about 400 feet away you can see the station." The outbound cars, from Los Angeles to Pasadena, use the easterly track and the inbound cars the westerly one.

February 12, 1923, the plaintiff, who was then of the age of about sixty-two years and was a resident of Chicago, having been in Los Angeles for only 48 hours, took one of the defendant's outbound cars to the station mentioned and alighted on the easterly platform at 7:30 in the evening, thence going to the home of relatives in that vicinity. He returned to the station shortly before 10 o'clock the same evening for the purpose of boarding an inbound car. "It was dark and cloudy, and had been raining." In approaching the station, he walked in a southwesterly direction diagonally across Pasadena Avenue to the easterly platform and stepped thence immediately in front of an outbound car, which struck him, causing the injuries of which he complains. The plaintiff testified: "There was an incoming car at that time on the track approaching that station and I noticed it. When I first noticed it, it was five or six hundred feet from the station. . . . I was intensely interested in getting the car that was coming from the north. I did glance down in a southerly direction and I did not at that time see any car coming from the southerly direction. . . . When I came to the platform I got upon it not far from the middle. . . . I was looking in the direction of . . . the car I wanted to take. At that time it was, say, a couple of hundred feet from me. . . . I immediately . . . proceeded to go across the tracks with the idea of getting to the other side of both tracks, so that I would be in a position to take the incoming car promptly when it arrived. . . . As soon as I had stepped over off the platform on to the track I saw this car coming from the south, or from Los Angeles, and before I could get across or get back it struck me. . . . It was 15 or 20 feet. . . . I did not hear the car coming from the south—did not hear any bell rung or any whistle. . . . My hearing then was good as it is now. . . . I had never been at this station before the time I got off at 7:30 that evening. At that time it was dark. At that time I paid no

attention to the fact that there was a curve in the road just before reaching that station. I had not noticed such curve." The plaintiff further testified that he "knew that cars operated back and forth" at that place; that when he looked to the left to see if an outbound car was approaching he was "not quite half way across Pasadena avenue," and that thereafter until he stepped on the outbound track he was continuously "watching the incoming car." The headlight of the car which struck the plaintiff and the lights inside the car were on at the time of the accident. The atmospheric conditions were not such as to prevent the plaintiff from seeing such lights, because, according to his testimony, he saw the inbound car when it was 500 or 600 feet from the station. The evidence is conflicting as to whether the motorman sounded his gong as the car approached the station. It appears from the motorman's testimony that he gave no warning signal after rounding the curve, except at a time too late to avoid the accident. Estimates of the speed of the car range from 18 to 25 miles an hour.

■ Whether or not the defendant was negligent in the operation of the car was, under the evidence, clearly a question of fact for the determination of the jury. If the "railroad station rule" be left out of consideration, the plaintiff's own testimony shows, as a matter of law, that he was guilty of contributory negligence. (*Klusman* v. *Pacific Electric Ry. Co.*, 190 Cal. 441 [213 Pac. 38]; *Lord* v. *Stacy*, 68 Cal. App. 517 [229 Pac. 874]; *Atkins* v. *Bouchet*, 65 Cal. App. 94 [223 Pac. 87]; *Finkle* v. *Tait*, 55 Cal. App. 425 [203 Pac. 1031]; *Ross* v. *Pacific Electric Ry. Co.*, 39 Cal. App. 658 [179 Pac. 538]; *Mayer* v. *Anderson*, 36 Cal. App. 740 [173 Pac. 174].) Appellant relies on *Wilkinson* v. *United Railroads*, 195 Cal. 185 [232 Pac. 131], as authority for his contention that the "railroad station rule" is applicable to the facts of this case. The court instructed the jury in accordance with such rule. Without expressing any opinion as to the merits of this contention, it will be assumed, for the purposes of this opinion, that such rule is so applicable, although in material respects the facts involved herein are unlike those of the Wilkinson case.

■ An ordinance of the city of Los Angeles limits the speed of street-cars and interurban cars to 20 miles an hour "along or across any street or portion of any street in the

city of Los Angeles; . . . provided, however, that the provisions of this section shall not apply to the crossing of any street by any such car when the same is running upon a private right of way if a gate is maintained at such crossing, or if a flagman is regularly stationed thereat, as a protection against accident.'' The court instructed the jury, in effect, that this ordinance has no application to the cars of the defendant while they are running on its private right of way. Appellant contends that the word "along" as used in the ordinance means "by the side of," or "in a line parallel with the length" of a street. If the ordinance were otherwise of doubtful meaning, the proviso therein makes it perfectly clear that it was the intention to limit the speed of cars only when they were running on the surface of streets.

The court modified some of the instructions requested by the plaintiff, but the modification did not change the meaning thereof in any material respect. The court refused to instruct the jury that, at the time and place of the accident, "The defendant owed a duty to plaintiff to use great care to avoid injury to him; that is, such care as, under the situation and circumstances, a prudent and reasonable person, guided by such considerations as ordinarily regulate the conduct of human affairs, would use."

The court instructed the jury as follows: "The care that an ordinarily prudent person must use in the exercise of ordinary prudence in dealing with agencies that because of power or momentum or for any other reason are liable to do great injury is very much greater than under other circumstances. So an ordinarily prudent person may be called upon under some conditions to exercise great care."

At the request of the plaintiff the court instructed the jury that, under the circumstances shown by the evidence, "The defendant was bound to exercise a higher degree of care in so operating its trains as not to endanger the safety of the plaintiff, than it would have been if plaintiff were crossing or about to cross its tracks at a crossing or other intermediate points, and failure so to do is negligence on the part of defendant."

In view of the foregoing instructions given by the court, it cannot be held that the plaintiff was prejudiced by the refusal to give the instruction requested by him.

In other instructions the court told the jury that "the same duty was imposed on the plaintiff to prevent being injured as was imposed on the defendants to prevent injuring him, and if the plaintiff received his injuries directly and proximately through the mutual fault or negligence of himself and the motorman, then your verdict must be for the defendants"; that "a railroad track upon which cars are frequently run is of itself a warning . . . that it is unsafe to go upon the track without exercising reasonable diligence in order to be aware of the approach of cars"; that if "the plaintiff, by exercising his senses with ordinary care and prudence, before he was struck, could have ascertained the approach of said car which came in contact with him, and could have known of the danger, if any, to be reasonably apprehended, but that he failed to exercise such care at that time, and thereby directly or proximately contributed to the happening of the accident, there can be no recovery"; and that "it was the duty of the plaintiff to exercise ordinary care for his own safety, and if you believe that the plaintiff failed to look and that the car was visible and was approaching in dangerous proximity, then it was the duty of plaintiff to have seen said car and to heed its approach as an ordinarily prudent person would have done under the same circumstances, and if you find that the plaintiff was negligent in this respect and that such negligence contributed to the accident, then the plaintiff cannot recover."

Standing alone, the latter part of the foregoing instruction states too strongly the plaintiff's duty to look and listen for an approaching car, but it is highly improbable that the jury was misled thereby, because in a later instruction, dealing particularly with the duty of the plaintiff to exercise care at the station, the court, at plaintiff's request, instructed the jury that, under the circumstances proved, "Plaintiff, in the absence of knowledge on his part of the approach of any car on said intervening track in time to have avoided the collision therewith, had the right to assume that defendant would so operate its car on its intervening track aforesaid as not to place plaintiff in peril and plaintiff was not under the same obligation to look out for his own safety by looking and listening as would be incumbent in general upon a person approaching railroad tracks

at a grade crossing with intent to cross said tracks, but it is for you to say, upon consideration of the whole evidence, whether the failure on plaintiff's part to effectively look and listen before he was struck by the defendant's car on the night in question, amounted to a want of ordinary care on his part.''

Considering the instructions together as a whole, any intelligent juror would understand therefrom that it was the defendant's duty ''to exercise great care'' in the operation of its cars to avoid injury to the plaintiff at the station, and that in determining whether the plaintiff exercised ordinary care for his own safety, consideration must be given to his ''right to assume that defendant would so operate its car on its intervening tracks . . . as not to place plaintiff in peril.'' The plaintiff was not entitled to a more favorable statement of the law applicable to the case. Other alleged errors are without merit and need not be specifically discussed.

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 14, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 10, 1929.

Curtis, J., Preston, J., and Langdon, J., dissented.